Robert L. POPE, Claimant,

v.

Anthony J. CELEBREZZE, Secretary of Department of Health, Education and Welfare, Respondent.

Civ. No. 1492.

United States District Court
W. D. North Carolina,
Charlotte Division.

Argued Aug. 28, 1962.

Decided Sept. 28, 1962.

Henry M. Whitesides, Gastonia, N. C., for claimant.

William Medford, U. S. Atty., and James Israel, Asst. U. S. Atty., for respondent.

CRAVEN, Chief Judge.

I. The Hearing Examiner decided claimant was entitled to disability insurance benefits under the Social Security Act. The Appeals Council reversed the Examiner's decision. This court now reverses the Appeals Council.

On June 23, 1958, claimant filed an application for benefits under Section 223 of the Act; on July 16, 1958 he had filed an application under Section 216(i) to establish a period of disability.

Getting to the merits of the matter is a large part of the difficulty in this case. Claimant's insured status expired on June 30, 1958, i. e., a date between the two application dates. After June 30, 1958 claimant was not in an insured status until October-December 1958 when he worked again sufficiently to make up a different twenty quarters so as to extend his coverage under the Act until June 30, 1960. At the time of the hearing before the Hearing Examiner (May 21, 1959), and at the time of the Hearing Examiner's decision (June 12, 1959) and at the time of the Appeal Council's reversal of the Hearing Examiner's decision (October 13, 1959), claimant *was* in an insured status, which fact was *not* known to either the Hearing Examiner or the Appeals Council, but which is conceded to be true in a subsequent opinion and decision of the Appeals Council.

The record also indicated (opinion of the Appeals Council) that claimant filed another unadjudicated application for disability benefits on August 12, 1960, which has been denied by the Bureau of Old Age and Survivors Insurance. The court is advised by the United States Attorney and claimant that no appeal was taken and the denial has become final.

Ironically, claimant's extended coverage expired June 30, 1960. It will not console claimant that he may have filed both too early and too late.

█ Claimant must have been under disability *at the time* his application was filed. 42 U.S.C.A. § 423(a) (1) (D). Gotshaw v. Ribicoff, 4th Cir., 307 F.2d 840. In the nature of things, the evidence at the date of hearing must relate back in point of time, and there is substantial evidence in this record to determine disability from the date of first application and continuously thereafter. Had the Examiner relied entirely upon heart disease, his findings would be difficult to support for the reason that the diagnosis date was some seven months after the date of application. True, the Hearing Examiner gave some weight to the coronary disease suffered by claimant, and stated in his decision that the coronary disease was first diagnosed on January 19, 1959. Actually, the record indicates an earlier diagnosis of heart disease by Dr. Dixon on December 4, 1958. As a matter of fact, claimant's original application alleges that he suffers from heart trouble, and the record is replete with frequent complaints of chest pains. Some of the other findings, if not symptomatic of heart disease, are consistent therewith. The Examiner's decision clearly reveals, however, that it is founded upon further and other evidence of claimant's physical disability: rheumatoid arthritis, swollen and painful right leg and ankle, limited movement of right leg, inability of claimant to stand on his feet for more than a short period of time, dyspnea. The medical reports also reveal that claimant is unable to walk without the aid of an artificial device such as a cane or crutch, that his response to treatment and therapy is "practically nil", and that he is "gradually getting worse". It is perhaps worth noting that claimant's stated reason for requesting reconsideration of the decision of the Bureau denying him benefits was, "I am not able to work because I am not able to stand on my feet." The medical evidence substantially supports that claim.

█ II. Section 205(g) of the Social Security Act (42 U.S.C.A. § 405(g)) provides for judicial review of "any final decision of the Secretary" of Health, Education and Welfare. For purposes of judicial review, a determination by the Appeals Council is a "final decision of the Secretary". Pirone v. Flemming, D.C., 183 F.Supp. 739, aff'd, 278 F.2d 508 (2nd Cir. 1960).

The court's decision upon review of the administrative proceedings is to be based on the record as a whole.

"(A) reviewing court is not barred from setting aside [an agency] decision when it cannot conscientiously find that the evidence supporting that decision is

substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456, 468 (1950).

III. Before the claimant is entitled to benefits under the Act, he must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C.A. §§ 416(i) (1) (A) and § 423(c) (2).

It has been wisely and humanely observed that:

"The social security statute does not require a claimant to be completely helpless or bedridden but merely that he be unable to engage in substantial and gainful activity (viewed in context with his age, education attainments, training and experience, and mental and physical capabilities) by reason of medically determinable physical or mental impairment." Roop v. Flemming, D.C., 190 F.Supp. 820, 822 (1960) and authorities cited therein; and see, Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

From the record it appears that claimant, a widower, was born on April 8, 1903. At the time of the alleged onset of his disability he was about 54 years old. He never attended school. He lives with his daughter and son-in-law. He has no income and has been dependent upon his son-in-law except for some assistance from his local government welfare agency. He has testified that he was unable to engage in any activity and had been advised by his doctor not to walk up steps or engage in even light activity such as picking up a bucket of water. His memory as to his past work history is vague. His recollection is that until 1937 he was employed as a farm worker, and thereafter interchangeably as a farmer or in textile mills.

In the instant case, the Hearing Examiner had before him the medical reports of three doctors who had conducted physical examinations of the claimant. He questioned and observed the claimant himself. Based upon the medical reports, the contact reports of claims representatives of the district office of the Department, various hospital records, and his own observation of claimant and his physical condition, the Examiner determined that claimant was in fact disabled within the terms of the Act and entitled to benefits under the Act.

One doctor stated in his medical report that claimant was totally and permanently disabled from "following his usual duties"; another doctor unqualifiedly classified the claimant as "physically, totally and permanently disabled". Though the expert opinion of claimant's physician as to claimant's "disability" under the Act is not, in and of itself, binding on the Examiner, an expert opinion to that effect which is uncontroverted by substantial evidence to the contrary is a proper ground upon which the district court may reverse the Secretary's decision adverse to the claimant. Teeter v. Flemming, D.C., 270 F.2d 871, 77 A.L.R.2d 636 (1959).

What this sort of testimony amounts to is the use of verbiage by the physician, sometimes disapproved, to convey a meaning not only approved but termed "essential in most cases". In Underwood v. Ribicoff, 298 F.2d 850 at 851, (4th Cir. 1962), the court said:

"(A) recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual. This is a matter of medical judgment to be decided with reference to the individual's general physical condition and the state of development of each of the defects. The expert medical opinion of treating or examining physicians on these subsidiary questions of fact will in most cases be essential in determining with respect to a particular individual the severity of an objec-

tively determinable physical impairment."

The Appeals Council was of the opinion claimant could engage in a "sedentary" type of work. Claimant had never worked except to farm and as a doffer in a textile mill. Neither can be performed sitting down. Doffing, according to the record, requires standing, reaching, bending over, and moving about.

■ The determination of whether one claiming disability insurance benefits under the Social Security Act is "unable to engage in substantial and gainful activity" requires as a prerequisite an examination of what claimant *can* do and what employment opportunities there are. A "mere *theoretical* ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960); and see, Varanedo v. Flemming, 295 F.2d 693 (5th Cir. 1961), (emphasis added). The activity in which claimant must be able to engage in order to justify a denial of benefits under the Act "must not only be gainful but substantial". Teeter v. Flemming, supra, (emphasis added).

"The end sought to be achieved (under the Social Security Act) should be that of determining a claimant's actual ability to engage in substantial gainful employment considering the experience he has in various lines of work, his education, his training and the actual availability of employment for a person of his age and capabilities. If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute." Ferran v. Flemming, 293 F.2d 568, 571 (5th Cir. 1961).

In addition to the medical evidence in this case, it must also be noted that claimant is illiterate. He is unskilled—he cannot even drive an automobile.

■ The court has carefully reviewed the findings and conclusions of the Appeals Council. In the light of the record as a whole they are not supported by substantial evidence. Unquestionably, all of the evidence shows claimant disabled within the meaning of the Act. The only difficult question is *when*. To pinpoint with scientific precision the precise day when one becomes disabled (unless dramatically) is beyond the capacities of men. And, yet, for administrative purposes it must be done. Quite obviously the Examiner picked out the coronary diagnosis date (January 19, 1959) as a convenient point to begin an arbitrary time period. He did it without appreciation of the consequences and under a misapprehension of law. One is left with the feeling from reading his whole decision that had he known the consequences of his date selection he would have found claimant disabled from application date. Such a conclusion is supported by substantial evidence.

This court has considered remanding this case with instructions to the Secretary to permit claimant to file an application as of January 19, 1959 nunc pro tunc. But claimant's insured status has now expired. Administrative regulations and procedures may unfortunately preclude such a simple solution. Query: whether the unappealed denial of his August 1960 application may be res judicata as to a new application proceeding. See, Langford v. Flemming, 276 F.2d 215 (5th Cir. 1960).

Claimant ought not be denied his rights under the Act because of his procedural misfortunes. Certainly in an administrative proceeding he is entitled to a decision on the merits.

The court adjudges on the record as a whole that the findings of the Hearing Examiner are supported by substantial evidence and that said findings require and support the legal conclusion that claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical impairment which can be expected to result in death or to be of long-continued and indefinite duration *from date of application*.

It follows that the final decision of the Appeals Council is not supported by substantial evidence and must be reversed. Judgment will be entered accordingly.