Bernice C. **WHALEY**, Plaintiff,

v.

John W. **GARDNER**, Successor to Anthony J. Celebrezze, former Secretary of the Department of Health, Education and Welfare, Defendant.

No. 64 C 42(2).

United States District Court
E. D. Missouri, E. D.

June 24, 1966.

■

Donald H. Whaley, Clayton, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

Plaintiff brings this action to review a final decision of the Secretary of Health, Education and Welfare, which determined that she was not entitled to a period of disability or to disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(a). Because of the determination on plaintiff's claim, claims for Child's Insurance Benefits submitted on behalf of plaintiff's two minor children were also denied. Plaintiff filed her application with the Social Security Administration on January 3, 1962. Following denial of her claim, a hearing was requested pursuant to §§ 405(b) and 421(d). A hearing was held May 17, 1963, and a decision adverse to plaintiff was rendered. The Appeals Council denied plaintiff's request for review. Plaintiff, a resident of St. Louis, Missouri, filed her complaint in this Court on February 4, 1964, under the provisions of § 405(g) of the Act, which gives this Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for rehearing." On April 3, 1964, the Court sustained defendant's motion to remand this cause to the Secretary "for further proceedings in order to obtain additional medical examinations of the plaintiff and to determine the extent of the plaintiff's alleged impairment." Pursuant to the Court's order, the Appeals Council vacated the prior determination and remanded the case to Hearing Examiner Benson C. Tomlinson for the purpose of procuring additional medical information and the conduct of further hearings as necessary. Further hearings were held on July 8 and 16, 1965, and the hearing examiner entered his recommended decision denying plaintiff's claim on July 23, 1965. The Appeals Council reviewed this decision and made additional findings in light of the amendments enacted in Public Law 89–97 and entered its order denying plaintiff's claim on October 27, 1965. The matter is once again before the Court on the motion of both parties for summary judgment.

The evidence reveals that plaintiff was seriously injured in an automobile accident on October 3, 1960. Her injuries were: severe contusion of the anterior chest and fracture of the sternum and right tenth rib; hemorrhagic lung; suspected compressive fractures of one or more of the fourth, fifth, sixth and seventh dorsal vertebrae; fracture of the right transverse process of the fourth lumbar vertebrae, and some suspicion of injury to the third right lumbar transverse process; fracture of the pelvis on the right side involving the superior and inferior ramus of the pubis; laceration of the right forearm, right thumb, left hand and left knee; and a burn on the left foot. Claimant was hospitalized from October 3, 1960, to December 13, 1960. During this period plaintiff reported continued back pain and she was started on physical treatment. A corset was prepared to give support in the area of the fourth and fifth dorsal vertebrae. Subsequent to her initial hospitalization, and continuing throughout the history of this case, plaintiff has complained of severe back pain starting beneath her shoulder blades and radiating up to her neck. She reports that the pain becomes quite marked whenever she does any significant activity or remains in one position, other than lying down, for any appreciable period of time.

During the period December 13, 1960, to November 9, 1962, plaintiff was followed by Dr. B. Klein and Dr. H. L. Acker. Dr. Acker had plaintiff re-admit-

ted to the hospital for intensive physical therapy on three different occasions. Plaintiff reportedly received relief from these treatments, but the pain would return shortly after the termination of the intensive therapy. Examinations during this period by Dr. Acker, hospital staff members, Dr. Frank Palazzo and others resulted in no clear-cut diagnosis. It appeared that plaintiff had no derangement of function in the extremities with the exception of some sensory decrease in the right hand and arm and some limitation of neck movement. There was no indication of atrophy. All of the fractures appeared to have healed properly. The only significant findings were "minimal" compression of the upper dorsal vertebrae and some fixed thoracic kyphosis. Dr. Palazzo rendered the most definite diagnosis, suggesting nerve root irritation due to the compression fractures of the thoracic vertebrae, aggravated by posture and exertion. He proposed alcohol injection treatment and possibly fusion if the injection was ineffective. Plaintiff determined to defer such treatment unless the pain became much worse.

Plaintiff underwent further examination and treatment in 1964 and 1965. The tests were essentially negative, as before. Myelograms revealed no abnormalities. One doctor diagnosed persistent myositis of the left paravertebral muscles. Another doctor diagnosed residual compression radiculitis. A psychiatric examination was made in June 1965, and this doctor found that plaintiff had an emotional disturbance of a depressive type. He felt she was in need of chemo- and physchotherapy. He felt the condition was reactive to the organic injuries suffered in the automobile accident and that the plaintiff was presently totally disabled. He was unable to say when this emotional disturbance had started. He did feel that there was a definite possibility of favorable results after three to six months of treatment.

Some of the doctors reported that they felt plaintiff's pains were somewhat exaggerated.

Dr. Fred C. Reynolds was called to appear as a medical advisor at the hearings held in July 1965. After reviewing all the medical testimony, Dr. Reynolds made it plain that he was baffled. He testified that the records revealed no organic findings to explain the pain. He felt the alleged pain distribution did not conform to the distribution pattern of the nerve roots which some had suggested as being involved. He found it significant that the records did not indicate any significant disuse or lack of function in any of the extremities. He felt that the psychiatric suggestions might be the most plausible as of the time of the hearing and that if psychiatric treatment produced no improvement, then a spinal fusion might be indicated.

The hearing examiner also called Dr. K. M. Wientge, a vocational consultant, to testify as an advisor. Dr. Wientge studied the various medical records and then expressed his opinion as to employability based on various hypothetical findings which the hearing examiner gave him. Plaintiff's past employment experiences, as well as her age and education, were considered, and these factors were related in specific terms to the local job market.

On the basis of the evidence and testimony, the hearing examiner found as follows: (1) that plaintiff suffered severe injuries in the auto accident, which have satisfactorily healed; (2) the plaintiff has no severe musculoskeletal impairment or any other severe organic impairment which would prevent her from engaging in substantial gainful activity; (3) that plaintiff has some mild organic pain and discomfort of the upper back, but not so severe as to prevent her from working; (4) that plaintiff did not have, during the period of her application, a mental impairment of such severity as to prevent her from substantial gainful activity; (5) the depression diagnosed in June 1965 is remediable and thus not a basis for finding disability; (6) that the evidence does not establish that plaintiff could not perform her prior

usual types of work, even if it be assumed she could not return to a typing job. The Appeals Council, in its further consideration of the case, made the following additional findings: (1) that plaintiff was not found to have a psychoneurosis until June 1965; (2) that such psychoneurosis is expected to improve with appropriate treatment within three to six months; and (3) that plaintiff has not had an impairment or combination of impairments which prevented her or could be expected to prevent her from engaging in any substantial gainful activity during any twelve-month period beginning prior to October 1, 1965.

Prior to the 1965 amendments, 42 U.S.C. §§ 416(i) (1) (A) and 423(c) (2) defined disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." The 1965 amendment modifies the definition to read "which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." The amendments further provided that no benefits shall be payable for any months prior to September 1965 where the claimant's entitlement is based on the new definition of disability.

 The scope of the court's review of the findings of the Secretary is limited in 42 U.S.C. § 405(g), providing that such findings are conclusive on the court, if supported by substantial evidence. The meaning of substantial evidence has been made quite clear; it means such evidence that if the case had been tried to a jury, the jury's verdict would have been conclusive and the court could not have justifiably directed a contrary verdict. Celebrezze v. Bolas, 316 F.2d 498 (8 Cir. 1963). The Bolas case further makes it clear that the claimant has the burden of adducing evidence to establish the statutory elements for entitlement to benefits. The court's function is to review the totality of the record to determine whether the Secretary has made

actual and specific findings of fact, and whether those findings are supported by substantial evidence. Patton v. Celebrezze, 227 F.Supp. 441 (D.Del.1964). In making this review, the court must judge the question of burden of proof in a practical way and not impose upon the claimant illogical and impossible standards. Ber v. Celebrezze, 332 F.2d 293 (2 Cir. 1964). This is particularly true where the alleged disability results primarily from pain, the cause of which is not clearly discernible. In any case, the claimant's burden is no greater than to prove his claim by a preponderance of the evidence.

We find that the Secretary has made full and complete specific findings and that these findings are supported by substantial evidence. We note at the outset that the hearing examiner was faced with a most difficult task. Plaintiff's claim is based almost entirely on subjective complaints of pain for which numerous doctors have been unable to find organic causes or adequate objective explanation. The record reveals that the hearing examiner fully and carefully considered: (1) plaintiff's subjective symptoms of pain; (2) the various possible explanations of that pain; (3) the totality of plaintiff's impairments, including pain, sensory losses, and cardiac deficiencies; (4) the prospects of remediability, giving due consideration to the various medical diagnoses; and (5) the ability of plaintiff to perform specific types of work assuming various levels of disability or pain. The examiner did not hold, or posit as the basis of his determination, that subjective pain cannot constitute a disability absent organic explanation. Instead, he held that such allegations of pain must be evaluated giving due consideration to all the evidence.

 The denial of benefits is sustainable from two points of view. In the first place, there is substantial evidence for finding that the actual pain suffered by plaintiff is not such as to preclude her from substantial gainful activity. There is no question that plaintiff has pain. But, several of the reporting doc-

tors felt the level of pain was exaggerated. Plaintiff herself declined the proposed alcohol injection treatment, deciding she did not desire to undergo such treatment unless the pain became much worse. The vocational consultant testified that employment could be obtained which would allow plaintiff to change positions frequently, thus counteracting some of the functional characteristics of plaintiff's pain. Taken as a whole, the evidence supports the finding that the plaintiff's level of pain does not preclude her from substantial gainful activity.

In the second place, assuming that plaintiff's pain is such as to constitute a disability, the evidence supports the finding that such disability is, within terms of reasonable probabilities, remediable. It is provided in 20 C.F.R. 404.-1502(g) that an individual will not be considered under a disability " * * * if, with reasonable effort and safety to himself, the impairment can be diminished." Assuming that the pain is caused organically by the compression irregularity of the vertebrae, we note that plaintiff has declined proposed treatment which the medical evidence reveals to have a significant probability of success. Assuming that the pain is psychosomatic or psychoneurotic in origin, the evidence reveals that significant improvement can be expected after three to six months of appropriate therapy.

█ The plaintiff has also contended that error was committed in the introduction of certain evidence and in the consideration by the first hearing examiner of extra-record medical and other information. As to the first contention, we have carefully reviewed the record and find that plaintiff was afforded a fair and impartial hearing. The record shows that the hearing examiner made great efforts to insure that he completely understood plaintiff's claim and the evidence. As to the latter contention, any error committed was cured by the second hearing. The prime consideration is that claimant's case be decided on an individual basis and that the claimant not be prejudiced by the consideration of extraneous generalized data and information. The second hearing exhaustively considered plaintiff's case on an individual basis. No prejudicial error is present.

█ We accordingly find that there is no genuine dispute as to any material facts and that the Secretary's determination is supported by substantial evidence. An order will be entered sustaining the defendant's motion for summary judgment.